UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
CHRISTOPHER RYAN,

                            Plaintiff,

                                              COMPLAINT
                                    JURY TRIAL DEMANDED

v.
                                Civil Action No.:_____

TOWN OF TONAWANDA,
TOWN OF TONAWANDA POLICE
DEPARTMENT,
JAMES STAUFFIGER, Individually and as
Chief of Police for the Town of Tonawanda
Police Department,

                            Defendants.

-----------------------------------------------------------x

## <u>NATURE OF THE ACTION</u>

      1.      This is an action filed by plaintiff, Christopher Ryan ("Plaintiff" or "Ryan") by and through his attorney Paul D. Weiss, Bartlo, Hettler, Weiss & Tripi, charging that Defendants violated his rights pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000(e), et seq., 42 U.S.C. §1981, 42 U.S.C. §1983, New York State Human Rights Law, the Uniform Services Employment And Reemployment Rights Act, 38 U.S.C §4301 et seq., the First Amendment of the United States Constitution, Article 1, Sections 1, 8 and 9 of the New York State Constitution, New York State Labor Law Section 201-d and New York State Civil Service Law 107.

      2.      This complaint seeks injunctive relief, declaratory judgment, equitable relief, and to recover money damages both accrued and prospective, together with attorney fees pursuant to 42 U.S.C. §1988.

3.      As set forth in detail below, Defendants, have discriminated against plaintiff on the basis of race, color, veteran status, and political affiliation.

## JURISDICTION AND VENUE

4.      The Jurisdiction is conferred on this court by 28 U.S.C. §1331 and 1343(3) and (4), 28 U.S.C. §2000(e) et seq., and the United States Constitution.

5.      This Court has jurisdiction over the New York State Law and New York Constitutional claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Western District of New York under 28 U.S.C. §1391(e)(1)(B) because the events giving rise to the instant complaint occurred in the Western District of New York.

## PROCEDURAL REQUIREMENTS

7.      Plaintiff has exhausted all administrative remedies.

8.      Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission on or about February 1, 2022.

9.      Plaintiff filed an Addendum to the Charge on or about August 8, 2022.

10.     The EEOC issued a right to sue letter on January 23, 2023

11.     Accordingly, Plaintiff has timely filed the instant complaint.

## PARTIES

12.     Plaintiff, Christopher Ryan, is an African American male who resides in the Village of Kenmore New York, which is located within Erie County and the Western District of New York.

13.     Defendant, Town of Tonawanda (the "Town"), is a Municipal Corporation with a principal place of business located at 2919 Delaware Ave, Kenmore, New York, 14217 which is

located within Erie County and the Western District of New York.

14.     Defendant, Town of Tonawanda Police Department (the "Police Department"), is a department of Defendant Town with a principal place of business at 1835 Sheridan Drive, Tonawanda, New York, 14223 which is located within Erie County and the Western District of New York.

15.     Defendant, James Stauffiger ("Stauffiger") is the Chief of Police for Defendant Town of Tonawanda Police Department as Chief of Police is the head of the Defendant Police Department and has a principal place of business at 1835 Sheridan Drive, Tonawanda, New York, 14223. Defendant Stauffiger is a White/Caucasian male and a resident of Erie County which is within the Western District of New York.

## STATEMENT OF FACTS

16.     Plaintiff is an African American male, who at all relevant times was and is a Police Officer for Defendant Town in Defendant Police Department.

17.     Plaintiff is a Veteran having honorably served several tours of duty in the United States Army and the Army National Guard from 1989 until 1996 and again from 2003 until he was honorably discharged in 2006,

18.     Following his initial tour of duty with the United States Army and the United States Army National Guard in 1996, Plaintiff worked for the United States Customs and Border Protection until July 2006.

19.     Plaintiff's employment with the United States Customs and Border Protection was interrupted by his redeployment in 2003 to combat duty in Operation Iraqi Freedom III.

20.     Plaintiff began his employment as a Police Officer with Defendants Town and Police Department on or about August 3, 2006.

21.     Plaintiff is a member of the Republican Party at the National, State, County and Town level.

22.     At all times relevant herein, Plaintiff was and is qualified to be a Police Officer and has been employed by Defendants Town and Police Department. Plaintiff has at all times performed his job in a competent manner and has had a clean employment record with Defendants Town and Police Department.

23.     Beginning from his initial appointment as a Police Officer, Plaintiff has been and continues to be assigned to patrol the streets, roadways, businesses and neighborhoods of the Defendant Town. When hired, Plaintiff was only the second African American to be employed as a Police Officer by Defendants Town and Police Department.

24.     Since Defendant Police Department's inception in 1920, only three (3) African American males have worked for Defendant Police Department; the third African American being hired in 2021.

25.     There are no African American Police Officers in any supervisory, leadership or management ranks of Defendant Police Department.   The Supervisory and Management ranks have always been White/Caucasian, and until recently, except for two positions, exclusively male.

26.     Defendants Town, Police Department and Stauffiger have repeatedly and continuously subjected Plaintiff to continuing and on-going discriminatory treatment based upon his race and color throughout his employment by Defendants Town and Police Department.

27.     Defendants Town, Police Department and Stauffiger's discriminatory customs, policies and/or practices continue to date.

28.     Defendants Town, Police Department and Stauffiger's discriminatory treatment

and discriminatory customs, policies and/or practices was sufficiently severe and so pervasive as to alter Plaintiff's conditions of employment.

29.     Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices have created a hostile work environment for Plaintiff.

30.     Plaintiff has suffered loss of employment opportunities within and outside the Police Department due to Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices toward Plaintiff due to his race and color.

31.     Plaintiff has been subjected to discrimination based upon his veteran status.

32.     Plaintiff has been subjected to discrimination due to his being a registered Republican and his lawful activity in the Town of Tonawanda Republican Party.

### A.   *Plaintiff Honorably Served in the United States Army and Army National Guard Service*

33.     In 1989, following his graduation from high school, Plaintiff enlisted for Active Service in the United States Army.    Plaintiff served three (3) years in the United States Army, 10th Mountain Light Infantry Division. He was deployed to Saudi Arabia and had additional deployments to Germany and Panama. During that time, he honorably served in combat operations in Operation Desert Shield/Desert Storm.

34.     In 1992, following Plaintiff's return from active duty in Iraq, Plaintiff enlisted in the Army National Guard.    While on duty with the Army National Guard, he entered active duty again, this time to a special assignment with the Buffalo Counter-Drug Unit. Plaintiff's work in the Buffalo Counter-Drug Unit included coordinating with other federal, state and local law enforcement agencies in joint drug interdiction missions.

35.     In 2003 Plaintiff re-enlisted in the Army National Guard.

36.     Plaintiff's Army National Guard duty was in the active service. Plaintiff was subsequently deployed to Iraq. Plaintiff's deployment to Iraq was a combat deployment.

37.     In Iraq, Plaintiff supervised, trained and led United States and Iraqi forces and the Iraqi Special Police in combat operations during Operation Iraqi Freedom III.

38.     During his deployment to Iraq, Plaintiff led a fire team in combat, directed personnel in offensive and defensive operations, conducted detainee interviews/interrogations, and provided tactical and technical guidance to subordinates.    In addition, Plaintiff was a trusted member of a Quick Reactionary Force responding to civil unrest, demonstrations and situations that threatened base defenses.

39.     During his active duty service in the United States Army and in the Army National Guard, Plaintiff received the Certificate of Appreciation for Cadet Training at West Point Military Academy, Certification of Achievement while serving in the First Battalion 22nd Infantry in an Exemplary Manner, Certificate Of Appreciation For Demonstrating Exemplary Performance and Dedication To Duty in The Second Battalion of the 108th Infantry, Certificate Of Proficiency In Firearms at The Expert Level, The Army Commendation Medal, four (4) Army Achievement Medals, the Combat Infantryman Badge, two (2) Good Conduct Medals, Reserve Components Achievement Medal with two (2) Oak Leaf Clusters, Southwest Asia Service Medals (with 2 Stars), Iraq Campaign Medal, Global War on Terrorism Service Medal, Armed Forces Reserve Medal (with Hourglass Bronze 10 years Distinction), Overseas Service Ribbon 2nd Award, Kuwait Liberation Medal (Saudi Arabia) and Kuwait Liberation Medal (Emirate of Kuwait).

40.     When not on active military duty, Plaintiff was employed by the United States

Customs & Border Protection Service from July 1996 until July 2006.

41.     Plaintiff's work as a United States Customs & Border Protection Officer enforced laws governing the importation or exportation of merchandise, detected and seized prohibited or smuggled contraband, performed criminal and non-criminal investigations, gathered intelligence relating to terrorism and/or terrorist activities, narcotics and currency smuggling; searched crime scenes for evidence and recorded crime scenes through written and photographic means; interviewed suspects and witnesses and testified in court; assisted with investigations wrote seizure arrest reports and depositions and presented investigations to various federal, state and local law enforcement agencies.

### B.  *Plaintiff's Formal Education, Certifications and Special Skills*

42.     Plaintiff obtained a degree in Criminal Justice from Erie Community College graduating with an Associate's Degree in May 1999.    Plaintiff furthered his formal education by receiving a Bachelor of Science Degree in Criminal Justice from Buffalo State College in December 2002.

43.     Plaintiff completed Passenger Interview Vehicle Inspection Interdiction Training, Land Border Outbound Drug Interdiction Training, Fraudulent Document Training, United States Customs Firearm Instructor Training Certification, United States Customs Defensive Tactics Instructor Certification, Combat Lifesaver Certification, Intermediate Force Instructor Training

44.     Plaintiff holds a black belt in Tae Kwon Do. Plaintiff has attained the Blue Level in Mauy Thai martial arts training. Plaintiff holds a black belt in Krav Maga, an offensive and defensive tactics system used by military forces around the world.

### C.  *Upon Plaintiff's initial Employment with Defendants Town and Police Department he is faced with Discrimination due to his Race and Color*

45.     Plaintiff, then looking to further his career in law enforcement became a Police Officer in the Defendants Town and Police Department on or about August 3, 2006.

46.     Plaintiff graduated from the Central Police Services Law Enforcement Training Academy in December 2006.

47.     Plaintiff was second in his class overall and first in his class in proficiency in firearms, defensive tactics, Emergency Vehicle Operation Course and First Aid Training.

48.     In spite of Plaintiff's formal education and training, having honorably served his country in times of combat as well as his experience on the front lines protecting this country against terrorism, narcotics, and currency smuggling, Defendants Town, Police Department and Stauffiger have engaged in a discriminatory treatment and discriminatory customs, policies and/or practices toward Plaintiff due to his race and color.

49.     With his experience and formal education, far superior to many of the other police officers in the Defendants Town and Police Department, Plaintiff thought that his previously noted proficiencies, as well as his enthusiasm and dedication to his duties as a Police Officer would demonstrate his worthiness and desirability as an asset to Defendants as a Police Officer.

50.     Plaintiff was and is highly motivated and his intention was and is to advance in both position and responsibility within Defendant Police Department.

51.     Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff due to his race and color, veteran status and political affiliation crushed Plaintiff's ability to advance to his fullest potential within the Defendant Police Department.

52.     Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices denied Plaintiff specialized assignments,

specialized training, supervisory opportunities, promotional opportunities, overtime opportunities and relegated him to the lowest rank of Police Officer, that of Patrol Officer.

53.	Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices denied Plaintiff supervisory responsibilities, resulted in adverse employment actions against him, resulting in loss of pay, artificially deflated pension, loss of self-esteem and mental anguish. Defendants Town, Police Department, and Stauffiger's actions were motivated by Plaintiff's race and color.

54.	Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices created a hostile work environment for Plaintiff.

55.	When Plaintiff first began his employment in August 2006, a more senior Police Officer took him aside, touching Plaintiff's arm and pointing to Plaintiff's skin color, told him, there were those in position of authority in Defendant Police Department that did not like his race and/or the color of his skin.

56.	However, Plaintiff was undeterred by the warning, kept his head down and proceeded to conduct himself in a professional fashion, diligently performing his duties as a Defendant Tonawanda Police Department Police Officer.

### D.  Defendants Deny Plaintiff Training Opportunities

57.	Early in his career, Plaintiff brought to the attention of Defendant Police Department his United States Army supervisory experience, his specialized proficiencies and training in firearms and his training in use of force tactics.

58.	Plaintiff hoped that Defendant Police Department would recognize Plaintiff's proven abilities as a benefit to Defendant Police Department and that once given an opportunity

to showcase his abilities, Defendant Police Department would realize the true asset it had in Plaintiff as a Police Officer in its ranks.

59.     On or about January 22, 2010, Plaintiff requested to attend the Instructor Development Course.    That request was denied.

60.     On or about December 25, 2010, Plaintiff requested to attend the Vehicle Interdiction School.    That request was denied.

61.     On or about January 22, 2013, Plaintiff requested to attend the Instructor Development Course.    That request was denied.

62.     On or about April 12, 2013, Plaintiff requested to attend the Crisis Services Outreach Program.    That request was denied.

63.     On or about July 19, 2013, Plaintiff requested to be appointed to the position of School Resource Officer - Alternate.    That request was denied.

64.     On or about July 19, 2013, Plaintiff submitted a letter of interest for the position of Field Training Officer – Second Platoon.    That request was denied.

65.     On or about May 24, 2014, Plaintiff submitted a letter of interest for the position on Defendant Police Department's Street Intelligence Unit. That request was denied.

66.     On or about December 14, 2014, Plaintiff requested to attend the Instructor Development Course at the Erie County Law Enforcement Training Academy.    That request was denied.

67.     On or about February 7, 2021, Plaintiff requested to attend the Small Town/Rural Criminal Interception and Interdiction Training.    That request was denied.

68.     Denial after denial substantiated the warning he received early on, Plaintiff's advancement in training and assignments was stymied by Defendants Town and Police

Department due to his race and color.

69.    Plaintiff has lost considerable income because such training and assignments involve being paid above and beyond his regular scheduled hours and inevitably leading to advancement in Defendant Police Department.

70.    Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices of refusing Plaintiff training and assignments during his career with Defendants made it apparent to Plaintiff it would be futile for Plaintiff to request specialized training and assignments.

71.    Defendants' refusal to allow Plaintiff to attend valuable training and to grant assignments was due to Plaintiff's race and color.

### E. Defendant Police Department Kicks Plaintiff out of SWAT Try-Outs

72.    On or about May 5, 2010, Plaintiff submitted a letter of interest for a position on the Police Department's Emergency Response Team, then-call Special Weapons and Tactics ("SWAT") Team.    That request was denied.

73.    In early 2012, Plaintiff inquired about trying out for the SWAT Team and again informed his superiors of his experience in the United States Army, Army National Guard and United States Customs and Border Protection.

74.    On or about March 15, 2012, Plaintiff submitted another letter of interest for a position on the Police Department's SWAT Team.    Training and try out for the SWAT Team consisted of successfully completing a series of twelve (12) instructional components.

75.    Plaintiff was initially afforded the opportunity to try out for SWAT in 2012.

76.    After Plaintiff successfully completed all but four (4) of the remaining components to be eligible for the SWAT Team, then-Lieutenant William Krier, a Police Officer

with a record of employment issues with Defendant Police Department, and SWAT Commander Captain Frank McNamara, met with Plaintiff.   Then-Lieutenant Krier told Plaintiff that he would not be allowed to complete the remaining instructional components.   No reason was given to Plaintiff for his dismissal from SWAT Team try-outs.

77.   It was well understood in the Department that once given the opportunity to try out for SWAT, if the Police Officer failed to successfully complete the full series of instructional components that constituted the SWAT Team try-outs, the Police Officer would be precluded from applying for SWAT through the rest of the Police Officer's career.

78.   SWAT Team members enjoy a rarified espirit d' corps, elevated stature in Defendant Police Department, and additional compensation and training.

79.   Had Plaintiff been permitted to complete SWAT Team try-outs and make the SWAT Team, Plaintiff would have been the first and only African American Police Officer and Combat Veteran SWAT Team member.

80.   Upon information and belief, Plaintiff's dismissal from the try-outs and Defendants' refusal to put him on the SWAT Team was due to his race and color.

### F.  *Defendants Refuse to assign Plaintiff as Acting Patrol Supervisor*

81.   Defendant Police Department employs approximately one hundred (100) Police Officers.   The head of Defendant Police Department is the Chief of Police, Defendant Stauffiger.   Officers subordinate to the Chief of Police in descending rank are the Assistant Chief of Police, Captains, Detective-Lieutenants, Lieutenants, and Patrol Officers.

82.   Defendant Police Department operates 24 hours a day 365 days a year. Police Officers are assigned to various duties and specialized assignments.

83.   The majority of Police Officers in Defendant Police Department are Patrol

Officers who are assigned to Patrol Platoons. Officers in platoons are assigned to the First shift 12:00 AM to 8:00 AM, the Second Shift from 8:00 AM to 4:00 PM and the Third shift from 4:00 PM to 12:00 AM. Patrol officers are assigned to "Day Off" groups within their Shift assignments.

84. Shift Lieutenants are Police Officers who are the first-line supervisors for Patrol Officers.

85. Lieutenants' duties and responsibilities include: supervises the enforcement of all laws and ordinances, departmental rules and regulations, orders, procedures, discipline, punctuality and attendance; appearance, good order and efficiency of members within his or her assigned jurisdiction; trains, directs, supervises and evaluates members in their assigned duties; recommends remedial or disciplinary action for inefficient, incompetent or unsuitable members; informs his/her relief of all necessary police matters; ensures that recovered property is handled in accordance with departmental orders; investigates all complaints lodged against subordinates in preliminary investigations; takes part in planning and budgeting functions of Police Department; maintains working relationship with other agencies; and communicates with the public in a manner that will be educational and informative.

86. The most important duty of a Shift Lieutenant is to supervise Patrol Officers.

87. Defendant Police Department historically did not have, and currently does not have a sufficient number of Shift Lieutenants to supervise Patrol Officers.

88. The reason for the lack of sufficient Shift Lieutenants could be as simple as Shift Lieutenants calling in sick and/or being off on personal leave or vacation. The additional and more serious reason is that there are not a sufficient number of Lieutenants in the Defendant Police Department.

89.     When there is no Shift Lieutenant on duty, Defendant Police Department assigns the senior Patrol Officers to work as the Shift Lieutenant.   Defendant Police Department refers to the assignment of a senior Patrol Officer to act as Shift Lieutenant as "Acting Patrol Supervisor" ("APS").

90.     There is no Standard Operative Procedure ("SOP") and or Department Policy as to how a Patrol Officer is assigned APS when needed.   However, the assignment has historically been given to the most senior and/or experienced Patrol Officer on a given shift when an APS is needed.

91.     When working as an APS, a Patrol Officer is given supervisory authority over the Patrol Shift and is paid at the Shift Lieutenant's higher rate of pay.

92.     Being assigned APS affords the Police Officer the opportunity to demonstrate the Patrol Officer's supervisory skills and potential as a Lieutenant.   Being assigned APS also instills a meaningful sense of self-esteem and fosters the Patrol Officer's ability to successfully advance to the position of Lieutenant and perhaps even higher rank. Successful work as an APS is generally seen as a gateway to promotion to Lieutenant.

93.     Permanent promotion to Lieutenant is contingent upon the Patrol Officer's successful completion of the written Erie County Civil Service Examination and Defendant Town's very subjective, and at times, chaotic and hostile, internal interview process conducted by Defendants Police Department and Stauffiger.

94.     Since a Patrol Officer working as an APS is paid at the higher Lieutenant's rate of pay for that shift, the Patrol Officer's salary and consequentially the Police Officer's pension are higher.

95.     While discouraged about Defendants' refusal to afford Plaintiff valuable training

and assignment, soon after Plaintiff gained experience he began to and repeatedly approached superior officers about assignment as APS.

96.     Plaintiff has continued to request APS assignment to date.

97.     Plaintiff was only the second African American Police Officer employed by Defendant Police Department.

98.     Darren Hearitt was the first African American Police Officer employed by Defendant Police Department.    While Officer Hearitt is currently a Detective in the Defendant Police Department, for years he was employed as a Patrol Officer.

99.     Detective Hearitt, when he served Defendants as a Patrol Officer, was never assigned APS.

100.    Plaintiff has never been assigned APS.

101.    Defendant Police Department's first two African American Police Officers were never assigned to supervise Patrol Shifts as an APS.

102.    Upon information and belief, Defendant Police Department has never assigned any African American officer as APS.

103.    Plaintiff was passed over for APS numerous times during his shift assignments.

104.    Whenever Defendant Police Department passed over Plaintiff for APS, it assigned a non-African American to APS.

105.    When Plaintiff was passed over for APS assignment, he was the more senior and/or more experienced officer than the non-African American Officer who was assigned APS.

106.    Often times when Plaintiff was passed over for APS assignment, the non-African American Patrol Officer assigned APS duty was a Patrol Officer who Plaintiff had advised and

mentored when the Patrol Officer was new to the Police Department and/or first joined Plaintiff's shift.

107.    Defendant Police Department has continued to discriminate against Plaintiff based upon his race and color by denying Plaintiff assignment to APS.

108.    Plaintiff is unaware of any other non-African American Patrol Officer with his seniority and/or experience who has been denied APS assignments.

109.    On each of the following dates a non-African American Patrol Officer with far less seniority and/or experience was assigned APS.   In each such instance, Plaintiff was on duty, and was ready, willing, and able to work APS.

November 14, 2021: APS was assigned to Robert Kubus

November 17, 2021: APS was assigned to Robert Kubus

November 20, 2021: APS was assigned to Joseph Gioele

November 21, 2021: APS was assigned to Jacob McCormick

November 26, 2021: APS was assigned to Joseph Gioele

November 27, 2021: APS was assigned to Andrew Klauk

December 23, 2021: APS was assigned to Joseph Gioele

January 7, 2022: APS was assigned to William Laugeman

January 8, 2022: APS was assigned to William Laugeman

January 15, 2022: APS was assigned to Sarah Heft

March 20, 2022: APS was assigned to Robert Kubus

March 27, 2022: APS was assigned to Robert Kubus

April 15, 2022: APS was assigned to Joseph Gioele

May 8, 2022: APS was assigned to Joseph Gioele

May 13, 2022: APS was assigned to William Laugeman

May 15, 2022: APS was assigned to Sarah Heft

May 21, 2022: APS was assigned to Joseph Gioele

June 8, 2022: APS was assigned to Matthew Agugliaro

110.   Defendants Police Department and Stauffiger have continued to deny Plaintiff APS assignments to date.

111.   Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices of refusing Plaintiff APS assignment was due to Plaintiff's race and color.

112.   Defendant Police Department's repeated refusals to assign Plaintiff as APS has resulted in the loss of income, the loss of pension benefits, mental anguish, emotional distress and loss of self-esteem.

### G. Defendants Police Department and Stauffiger's Conduct Evidences Discriminatory Treatment and Creates and Continues the Hostile Work Environment

113.     Following the Black Lives Movement in the Summer of 2020 and following an incident at a local Speedway gas station, Defendant Stauffiger scheduled a meeting with minority representatives from in and around the Town of Tonawanda.

114.     In order to prepare himself for that meeting, Defendant Stauffiger set up a meeting on or about February 25, 2021, with Plaintiff, Detective Hearitt, Police Officer Bikram Singh and Paramedic Ruddy Rodriquez, then the only minority employees in Defendant Police Department.

115.     Plaintiff is African American.   Darren Hearitt is African American.   Bikram Singh is Indian (South Asian) and Ruddy Rodriguez is Hispanic/Latino.

116.     During the meeting, Plaintiff and Detective Hearitt told Defendant Stauffiger about the discriminatory treatment and discriminatory customs, policies and/or practices in Defendant Police Department.

117.     Defendant Stauffiger feigned ignorance of the racist and discriminatory treatment and discriminatory customs, policies and/or practices in the Department, even though he was part of the command staff for years prior to his being promoted to Chief of Police in October 2019.

118.     Defendant Stauffiger's feigned ignorance was even more unbelievable in that as an Assistant Chief and then Chief, he did and has micromanaged every aspect of Defendant Police Department.   Defendant Stauffiger's management of the Department has been irrational and mercurial.

119.     Defendant Stauffiger routinely amends, counters and/or overrules the decisions of command staff and even Patrol Officers.   Defendant Stauffiger's decisions and actions are not based on reason or good policing or good labor relations policies.

120.     Defendant Stauffiger's actions have been the subject of a highly critical "climate

survey" by the Town of Tonawanda Police Club, the union representing Police Officers in Defendant Police Department.

121.     Prior to the February 25, 2021, meeting, Plaintiff and Detective Hearitt met and debated whether to provide Defendant Stauffiger with their honest appraisal of how they suffered discrimination as African American officers in Defendants Town and Police Department.

122.     While reluctant to do so because the meeting with Chief Stauffiger would be meaningless and/or worse would result in retaliatory discriminatory actions by Defendant Stauffiger, both Plaintiff and Detective Hearitt decided to provide Defendant Stauffiger with information on the racist and discriminatory treatment and discriminatory customs, policies and/or practices in the Department.

123.     Unfortunately, Plaintiff's worst fears turned true, as he was both disappointed by Defendants Police Department and Stauffiger's reactions as well as retaliated against following the meeting.

124.     Plaintiff described to Defendant Stauffiger that when Plaintiff first started with Defendant Department another Police Officer had warned Plaintiff that there were superiors in the Defendant Department who did not like him being in Defendant Police Department because of the color of his skin, Defendant Stauffiger replied approvingly "So somebody actually gave you the heads up."

125.     During the meeting Plaintiff recounted how during a 2008 arrest of a drunken Town of Tonawanda Volunteer Firefighter and Town employee ("Volunteer Firefighter"), the Volunteer Firefighter hurled racial slurs and diatribes against Plaintiff.    The firefighter called Plaintiff "Nigger" multiple times and referred to Plaintiff as "you people." Plaintiff told his superiors about the incident and nothing was done regarding the Volunteer Firefighter.

126.     When Plaintiff told Defendant Stauffiger of the incident at the February 25, 2021, meeting, Defendant Stauffiger responded "I know the family."    Defendant Stauffiger responded in such a way to convey that Volunteer Firefighter's family were friends of his and 'were good people.'    The clear implication was there was an institutional hands-off approach for a member of a well-connected Town of Tonawanda Volunteer Firefighter family.

127.     In addition, at the meeting, Plaintiff indicated that he had applied for Defendant Police Department's SWAT Team two (2) times but was never selected, in spite of his military training and experience.

128.     Plaintiff told Defendant Stauffiger that after successfully completing eight (8) of the twelve (12) days of training components, he was not afforded the opportunity to continue training and in fact was cut from the training. Defendant Stauffiger did not respond to Plaintiff.

129.     In the meeting, Plaintiff detailed repeatedly how he had approached superior officers for the purpose of attending additional training opportunities and certification courses. Each time, one superior officer after another, rebuffed his training requests in one fashion or another.    Defendant Stauffiger did not respond to Plaintiff.

130.     Plaintiff further detailed that in 2014, when he requested an instructor assignment at the Police Training Academy he was turned down.    Defendant Stauffiger did not respond to Plaintiff.

131.     Additionally, during the meeting, Plaintiff further told Defendant Stauffiger that since his hiring in 2006, he had never been assigned APS.    Detective Hearitt, who has been with Defendant Police Department even longer, was never assigned APS when he was a Patrol Officer.

132.     Plaintiff asked Defendant Stauffiger in regard to APS assignments "Is there

something that I am not doing, if so, what do I need to improve and get APS?"

133.     Defendant Stauffiger did not respond to Plaintiff or Detective Hearitt.

134.     Plaintiff attended the meeting under the assumption that Chief Stauffiger wanted to understand the discrimination Plaintiff had suffered in the Defendant Police Department. Defendant Stauffiger did not respond to Plaintiff.

135.     After the meeting concluded it was apparent that Defendant Stauffiger had used the meeting for the sole purpose of preparing himself for a meeting with minority groups in the community which immediately followed the meeting.

136.     Nothing positive developed from that meeting.   This reality further hit home because instead, Defendant Stauffiger retaliated against and discriminated against Plaintiff further and worse than previously.

### H.  Defendant Stauffiger's Discriminatory, Disparaging and Demeaning Conduct Creates and Continues the Hostile Work Environment:   March 10, 2021

137.     On Wednesday March 10, 2021, Plaintiff worked his regular Day Shift. At the beginning of his shift, Plaintiff left the Police Department Public Safety Building ("Building") by walking through the Mechanics Garage making his way out to the parking lot to his patrol car.

138.     As Plaintiff exited the Building into the parking lot, Police Officers Sarah Heft, Bikramjit Singh, and Daniel Murphy III were engaged in a conversation with Defendant Stauffiger. Plaintiff formally and properly acknowledged Defendant Stauffiger and the other officers and continued to his patrol car.

139.     As Plaintiff reached his patrol car, Defendant Stauffiger yelled out, "Hey it's Chris Ryan".   Plaintiff again, formally and properly acknowledged Defendant Stauffiger.

140.     Since a reasonable person would not have interpreted "Hey it's [followed by their name] to mean to report to the superior officer, Plaintiff did not.

141.     Defendant Stauffiger then yelled at Plaintiff in front of the other officers, stating "That means get over here!" Defendant Stauffiger yelled at Plaintiff in the manner of a southern plantation owner yelling to an adult black male slave "Get over here BOY!"

142.     Plaintiff was completely surprised, embarrassed and humiliated by Defendant Stauffiger. Plaintiff immediately proceeded to Defendant Stauffiger's location. Defendant Stauffiger's statement was discriminatory toward Plaintiff, was evidence of a hostile work environment and was intended to, and did, demean, and embarrass Plaintiff in front of his colleagues.

143.     While Plaintiff was standing there, additional Police Officers, including Officers Kevin Strand, Jeremy Wyse, and Joseph Gioele walked out of the building and joined the group. Defendant Stauffiger informed the group that it was Lieutenant Timothy Hark's last day and that at 1500 hours the officers were to return to the station so as to give Lieutenant Hark a proper send off.

144.     Defendant Stauffiger also began to talk about manpower and informed the group including Plaintiff that there was currently one individual in the police academy and that the Defendant Police Department was accepting a lateral transfer from the University Police at the State University of New York at Buffalo.   Defendant Stauffiger then asked Plaintiff and the group if they knew anything about this? None of the officers present knew about this.   Chief Stauffiger went on to say, "Well it looks like there is a breakdown in communication."

145.     Defendant Stauffiger as a former non-combat Marine, and Plaintiff as a United States Army Combat Infantry Veteran, understood from their military training that if a subordinate was unaware of some piece of information deemed significant by a higher-ranking

official, it is uniformly understood the subordinate's failure to know the required information was the subordinate's fault and was not the fault of the higher-ranking individual.

146.    While Defendant Stauffiger's comment may have flown over the heads of the other Police Officers, Plaintiff as the Military Veteran in the group, knew what Defendant Stauffiger meant that Plaintiff was the intended target of the comment.

147.    Defendant Stauffiger was demeaning to Plaintiff in front of his colleagues for failing to be aware of something Plaintiff had no reason to know of at that time.

148.    Defendant Stauffiger has taken no such actions against non-African American Police Officers or Police Officers who were not Military Veterans.

**I.    Defendant Stauffiger's Discriminatory, Disparaging and Demeaning Conduct Creates and Continues Hostile Work Environment:    April 18, 2021**

149.    On or about April 3, 2021, a citizen filed a complaint against Plaintiff for the alleged manner in which Plaintiff handled a suspicious person call.    The Defendant Police Department investigated the complaint.

150.    Plaintiff's immediate supervisor, Lieutenant Patrick Day ("Lieutenant Day") and Plaintiff's commander, Captain David Price ("Captain Price") investigated the complaint and determined the complaint to be unfounded.    Both Lieutenant Day and Captain Price exonerated Plaintiff from any wrongdoing.

151.    However, the citizen who filed the complaint was not satisfied and apparently followed up directly with Defendant Stauffiger.

152.    On or about April 18, 2021, Plaintiff was notified by Lieutenant Day that at the direction of Defendant Stauffiger, Lieutenant Day had to call Plaintiff for another, and unnecessary, interrogation.

153.     The interrogation was serious enough that Plaintiff was required to have his Union (known as the "Police Club") representative Detective Joseph Kazmark ("Detective Kazmark") attend.    Lieutenant Day reviewed the complaint again and in detail with Detective Kazmark and Plaintiff.    Lieutenant Day interrogated Plaintiff regarding the particulars of the call.    Lieutenant Day then reviewed the video from Plaintiff's body worn camera.

154.     Once again, Lieutenant Day found no wrongdoing and/or lack of professionalism by Plaintiff. The only issue was Plaintiff's failure to have his mask on and he was exonerated from that issue due to exigent circumstances during the call.

155.     Later that same day Plaintiff was called into yet another interrogation on the same matter.    At the second interrogation, Captain Price questioned Plaintiff with Lieutenant Day and Detective Kazmark in attendance.

156.     Captain Price went over the complaint another time.    At the end of the interrogation, Captain Price concluded that the complaint was unfounded and Plaintiff was again exonerated.    Captain Price also concluded that if Plaintiff had taken the time to put on a face mask, doing so would have created an officer safety issue due to exigent circumstances during the call.

157.     Shortly after April 18, 2021, Defendant Stauffiger indicated that he wanted disciplinary action to be taken against Plaintiff for the unfounded allegations in the complaint. Defendant Stauffiger took this position even after Plaintiff's immediate supervisor and commanding officer determined the complaint to be unfounded.

158.     Defendant Stauffiger's desire to discipline Plaintiff was stopped by intervening Command Officers and a momentary degree of reason by him.

159.     Defendant Stauffiger has never attempted to discipline a non-African American Police Officer after the officer had been formally cleared of any wrongdoing by the Officer's immediate supervisor and commanding officer.

160.     Defendant Stauffiger has used repeated and unwarranted interrogations as a weapon to discriminate against Plaintiff due to Plaintiff's race, color, and veteran status.

161.     Plaintiff had to defend himself and suffer through these unwarranted interrogations.

162.     Defendant Stauffiger's misuse of the interrogations against Plaintiff evidences Defendant Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices toward Plaintiff due to his race, color and veteran status and was further evidence of a pervasive hostile work environment in Defendant Police Department.

**J.     *Defendant Stauffiger's Discriminatory, Disparaging and Demeaning Conduct Creates and Continues the Hostile Work Environment:    May 18, 2021***

163.     On or about May 18, 2021, Lieutenant Day notified Plaintiff that Defendant Stauffiger would be interrogating Plaintiff later that day.

164.     Defendant Stauffiger did not give the reason for the interrogation or the purpose of the interrogation which added stress to Plaintiff who had to work the rest of his shift knowing he would be interrogated at the end of the day, but not the reason for the interrogation.

165.     In order to gin up the seriousness of the interrogation, Defendant Stauffiger instructed Plaintiff to bring a Police Club Representative.

166.     Defendant Stauffiger conducted the interrogation. Assistant Chief, Joseph Fennell and Police Club Vice President William Laugeman were in attendance.

167. Defendant Stauffiger approached the interrogation in a "Captain Queeg" like fashion reminiscent of *The Caine Mutiny*. Defendant Stauffiger started off by alleging that Plaintiff has been turning his back on him when Defendant Stauffiger enters a room.

168. Defendant Stauffiger accused Plaintiff of intentionally turning his back on him as a sign of disrespect.

169. Defendant Stauffiger asserted that very morning Plaintiff turned his back on him during briefing. Defendant Stauffiger said that the whole room was "facing" him, and Plaintiff was the only one with his back turned to him.

170. Plaintiff respectfully denied Defendant Stauffiger's erroneous allegation.

171. Plaintiff respectfully asked Defendant Stauffiger about the other times(s) Defendant Stauffiger thought Plaintiff was not properly facing him. Defendant Stauffiger replied that the other time was during a training session.

172. Plaintiff recollected the training session as non-eventful and remembered that the only training session that Defendant Stauffiger could be referencing was held late in 2020 with Plaintiff's day off group in a small conference room in the basement of Police Headquarters.

173. Plaintiff told Defendant Stauffiger that Plaintiff didn't remember him stopping in at any time during the training. Defendant Stauffiger replied adamantly that he did, and that Plaintiff had in fact turned his back on him.

174. After telling Defendant Stauffiger multiple times that Plaintiff did not recall him stopping in, Defendant Stauffiger repeated the allegations against Plaintiff.

175. Defendant Stauffiger went on to say that Plaintiff's "behavior" has been rude and unprofessional. Defendant Stauffiger said that Plaintiff may not like him, but he didn't have to like him.

176.    Defendant Stauffiger then attacked Plaintiff because of Plaintiff's veteran status. Defendant Stauffiger told Plaintiff that he holds Military Veterans to a "higher standard" than the other police officers and that he expects more from a Police Officer who is a Military Veteran. He also went on to say that this type of behavior and disrespect would not be tolerated toward any supervisor, especially him, as the Chief of the Police.

177.    Defendant Stauffiger singled out Plaintiff as a Military Veteran and discriminated against Plaintiff due to his veteran status.

178.    Defendant Stauffiger's discriminatory conduct toward Plaintiff is especially egregious given that Defendant Stauffiger, as a former non-combat Marine, did not and does not hold himself to the same standards that he imposes on Police Officers who are Military Veterans.

179.    Prior to becoming Chief of Police, Defendant Stauffiger was involved in an extra-marital affair with the wife of another police officer in the Defendant Police Department. Paradoxically, under the Uniform Code of Military Justice, Article 134, Adultery, is considered to be to the prejudice of good order and discipline in the armed services. Defendant Stauffiger's actions could also have been conduct unbecoming a police officer under the Rules and Regulations of Defendant Police Department.    Defendant Stauffiger, as Chief of Police, currently is the direct supervisor of that police officer.

180.    Near the end of the interrogation, Police Club Vice President Laugeman specifically asked Defendant Stauffiger if there was any other Police Officer that "we need to address with this same issue so that we are not in here again?"    Defendant Stauffiger responded "No."

181.    Defendant Stauffiger's so-called interrogation of Plaintiff clearly evidenced that Plaintiff had been singled out by Defendant Stauffiger for this kind of attack.

182. After the interrogation, Plaintiff and Police Club Vice President Laugeman spoke to Lieutenant Day. Lieutenant Day specifically recalled that Defendant Stauffiger never came into that training class the day in question.

183. In addition to the event not happening, the accusation was illogical because due to the room size and seating configuration it would have been impossible for Plaintiff to have had his back to anyone who came in the room.

184. Defendant Stauffiger, as was his practice, either on his own directly, or by ordering his subordinate officers such as Captains and Lieutenants again and again misused interrogations as a weapon to discriminate against Plaintiff due to Plaintiff's race, color, and veteran status.

185. Defendant Town knew that Defendant Stauffiger misused interrogations to discriminate against Plaintiff and to create a hostile work environment for Plaintiff.

186. Defendant Town's refusal to stop Defendant Stauffiger's discrimination against Plaintiff evidences its implicit approval of Defendants Police Department and Stauffiger's discrimination.

187. Plaintiff had to defend himself and suffer through these unwarranted interrogations.

188. Defendant Stauffiger's misuse of interrogations evidenced Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff was due to Plaintiff's race and color and veteran's status.

189.     Defendants' discriminatory use of interrogations against Plaintiff due to his race, color, and veteran status was further evidence of a pervasive hostile work environment in Defendant Police Department.

### K.  *Tonawanda Town Attorney finds in favor of Plaintiff in his investigation of Defendant Stauffiger*

190.     On June 25, 2021, Plaintiff formally complained in writing to Defendant Town of Tonawanda as to the many incidents described above regarding acts of racial discrimination and the racially hostile work environment and discrimination based upon Plaintiff's veteran status in the Defendant Police Department and as well as at the hands of Defendant Stauffiger.

191.     That same day, Plaintiff met with then-Town Attorney, and now Deputy Erie County District Attorney-Executive Assistant, Mario Giacobbe, and then-Deputy Town Attorney Michael Kooshoian.

192.     Following the meeting, Mr. Giacobbe investigated Plaintiff's complaints.

193.     In response to Plaintiff's complaints, Mr. Giacobbe wrote on July 13, 2021: "Please be advised that the Legal Department has concluded its investigation regarding the complaints filed by Detective [name initially deleted] and Police Officer Christopher Ryan against Chief Stauffiger. I have updated Supervisor Emminger as well as the Town Board on my findings and ***the matter will be addressed internally***. Therefore, this matter is now closed." (***Emphasis added***).

194.     The reference to the complaint by another police officer, "Detective [name initially deleted]," dealt with Defendant Stauffiger's allegedly unstable conduct during the other officer's interview for a Lieutenant's position in the Department and Defendant Stauffiger allegedly offering a Xanax to a subordinate Police Officer.

195. Notably, Mr. Giacobbe's investigation determined that Plaintiff's complaints required action by the Town to address them. Mr. Giacobbe did not rule that Plaintiff's complaints were unsustained or unfounded.

196. Although Mr. Giacobbe indicated that Plaintiff's complaints would be addressed, Defendant Town did nothing about Plaintiff's Complaint.

197. It subsequently became apparent that the intentional and ineffectual internal complaint process was a "catch and kill" operation.

198. Employees were required to utilize Defendant Town's internal complaint process only to have nothing done about their complaints. Defendant Town's "catch and kill" ploy was intended to stoke a sense of futility, frustration and doubt by employees who complained, instilling a sense of futility in employees so that they would give up on pursuing their complaints.

199. While then-Town Attorney found the need to address Plaintiff's complaints with Town of Tonawanda Supervisor Emminger and the Town Board for Defendant Town, Defendants took no action to address Plaintiff's complaints which ratified Defendants' discrimination against Plaintiff.

200. Defendant Town's failure to truly address Plaintiff's complaints has resulted in emotional distress, mental anguish and loss of self-esteem to Plaintiff.

**L. Defendants use a Political Complaint to Discriminate against Plaintiff for his Permitted and Lawful Political Activity and Affiliation**

201. Matthew DeRose, at all relevant times was and is a Paramedic for Defendants Town and Police Department.

202. On or about August 7, 2021, Plaintiff was engaged in driving Republican Candidate for the Town of Tonawanda Town Board, Scott Marciszewski, around the Town of

Tonawanda as part of Mr. Marciszewski's campaign for the November 2021 Town Board Elections.

203.    Matthew DeRose's house was on Mr. Marciszewski's campaign route the day that Plaintiff was chauffeuring Mr. Marciszewski.

204.    Since Plaintiff knew Mr. DeRose as a Paramedic from Defendant Police Department, Plaintiff introduced Mr. Marciszewski to Mr. DeRose.

205.    Since Defendant Police Department Rules and Procedures preclude it, Plaintiff did not solicit a vote.    Plaintiff took no action in violation of Defendant Police Department Rules and Procedures.

206.    In contrast, during the 2021 Election season, Defendant Stauffiger actively and visibly supported the election efforts for Democratic candidates. Defendant Stauffiger attended numerous Democratic Fundraisers.    Defendant Stauffiger was seen with and around Democratic candidates for office.    Defendant Stauffiger made significant personal contributions to Democratic committees or individual Democratic Candidates.

207.    In November, 2021, after the election, and three (3) months after the August 7, 2021 encounter, Mr. DeRose "informally disclosed" to Detective Lieutenant Krier the interaction.

208.    The Defendant Police Department then initiated an investigation of the non-event.

209.    Defendant Police Department's investigation included Defendant Police Department and Defendant Stauffiger's weapon of choice, the interrogation.

210.    As usual, Plaintiff was instructed to appear for an interrogation, but not given the reason for it. As intended by Defendant Police Department and Stauffiger, early notification of

the interrogation and having to wait sometime for it to occur caused Plaintiff additional stress, anxiety, and mental anguish.

211.    The investigation revealed Plaintiff did not violate Defendant Police Department Rules and Procedures.

212.    However, being interrogated by a superior officer for this, the flimsiest of reasons, created a chilling effect that continued the hostile work environment for Plaintiff by Defendants Police Department and Stauffiger.

### M. Further Racial and Political Discrimination caused by New York State Assemblymember William Conrad's Complaint of July 21, 2022 against Plaintiff

213.    On or about July 26, 2022, Plaintiff was interrogated by Defendant Police Department regarding matters in his personal life and unrelated to his duties and responsibilities as a Police Officer.

214.    Prior to July 26, 2022, Plaintiff dated a White Female. As of July 26, 2022, Plaintiff had not dated the White Female for some time.    However, because Plaintiff and the White Female live in the same town, Plaintiff would see the White Female in passing.

215.    At no time prior to, and even after July 26, 2022, had the White Female complained about Plaintiff's conduct or Plaintiff's interaction with her to Defendant Police Department.

216.    However, by complaint of July 21, 2022, New York State Democratic Assemblymember William Conrad (Assembly District 140) ("Assemblymember Conrad") initiated a complaint on his own but purportedly for the White Female against Plaintiff.    Prior to being elected to the New York State Assembly, Assemblyman Conrad was a Town Councilman for Defendant Town.

217.    Plaintiff is a registered Republican.    Plaintiff is active in the National, State, County and Town Republican Organizations.

218.    Plaintiff has never engaged in political activity beyond that permitted by Defendant Department Rules and Regulations.    Plaintiff has never engaged in political activity while in uniform.

219.    Plaintiff's activity in the Republican Party is well known in the Town and among members of the opposing Democratic Party, including by Assemblymember Conrad.

220.    Solely as a result of Assemblyman Conrad's complaint, Defendant Police Department sought out the White Female multiple times in an attempt to intimidate and bully her into making a statement complaining of Plaintiff's conduct.

221.    As the White Female had no reason to file any complaint, the White Female adamantly refused to file a complaint about Plaintiff with Defendant Police Department.

222.    In fact, in a show of significant fortitude in the face of serious intimidation by Defendant Police Department, the White Female refused to talk with Captain Flatau, Plaintiff's supervisor who was investigating the specious claim.

223.    Although Assemblymember Conrad's complaint should have never seen the light of day, the Defendant Police Department and Stauffiger kowtowed to Assemblymember Conrad, a high-ranking and well-connected Democratic Party member, who wanted something done about Plaintiff, an African American, and a Republican.

224.    Defendant Police Department ordered Plaintiff into an interrogation about his contacts with the White Female.    Plaintiff repeatedly informed Captain Flatau that he had no interaction with the White Female since they mutually ended their relationship.

225.     Although Captain Flatau has had well documented and repeated lapses of judgment on and off duty (see, https://buffalonews.com/opinion/editorial/the-editorial-board-repeated-misconduct-by-tonawanda-police-raises-questions-about-culture/article_adc9806e-3a84-11ed-a62f-43adb6cadbad.html ), during the interrogation he threatened Plaintiff against any contact with the White Female.

226.     Captain Flatau yelled at Plaintiff during the interrogation, saying numerous times, "No contact!" with the White Female as if Captain Flatau was scolding a child.

227.     In a veiled threat, Captain Flatau said that Plaintiff had been around "long enough to know how domestics can go." Captain Flatau also made the ominous statement that he would have to review his investigation of this matter with Defendant Stauffiger.

228.     It was apparent that Plaintiff had crossed the "Tonawanda Line"; he was an African American male who had the audacity to date a White Female.

229.     In addition, Plaintiff was and is a known Republican who worked on Republican campaigns at the Town, County and National level.

230.     Being interrogated by a superior officer creates a chilling effect that resulted in a and continued the hostile work environment for Plaintiff.    It has caused Plaintiff stress and emotional distress and mental anguish and has caused Plaintiff to unnecessarily question his every interaction with his colleagues and civilians alike.

231.     Neither Defendant Police Department nor Defendant Stauffiger interrogated or caused to be interrogated a non-minority officer for purely benign actions in his/her personal life and/or due to the Officer's well-known political activities.

232.    Neither Defendant Police Department nor Defendant Stauffiger interrogated or caused to be interrogated a Police Officer because of the Police Officer's lawful political activities.

233.    Plaintiff was interrogated because of his race and color and because of his well-known lawful political activities.

**AS AND FOR A FIRST CLAIM FOR
RACE DISCRIMINATION IN VIOLATION OF
<u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.</u>**

234.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

235.    Plaintiff alleges that Defendants Town and Police Department, by and through their agents, engaged discriminatory treatment and discriminatory customs, policies and/or practices of discrimination against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's race and color.

236.    Defendants Town and Police Department's treatment and discriminatory customs, policies and/or practices evidences race discrimination against Plaintiff.

237.    Defendants Town and Police Department knew or should have known about this racial discrimination against Plaintiff.

238.    Defendants Town and Police Department failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by race.

239.    As a result of discriminatory treatment and discriminatory customs, policies and/or practices discriminatory acts of Defendants Town and Defendant Police Department, acting under the color of law, through its agents, Plaintiff suffered economic damages, emotional

distress, mental anguish, humiliation and embarrassment, legal and related expenses.

240. Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR A SECOND CLAIM FOR**
**RETALIATION IN VIOLATION OF**
**<u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964</u>**

241. Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

242. Plaintiff alleges that the Defendants Town and Police Department, by and through their agents engaged in retaliation against Plaintiff as a result of his lawful complaints, both formal and informal, about discriminatory treatment in the workplace.

243. Defendants Town and Police Department knew or should have known about this retaliatory conduct.

244. Defendants Town and Police Department failed and refused to take appropriate action to end retaliation which Plaintiff was subjected to, which failure to act was motivated by race and bad faith.

245. As a result of retaliatory acts of the Defendants Town and Defendant Police Department, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

246. Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR A THIRD CLAIM FOR**
**HOSTILE WORK ENVIRONMENT IN VIOLATION**
**<u>OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964</u>**

247.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

248.     Plaintiff alleges that Defendants Town and Police Department's discriminatory treatment and discriminatory customs, policies and/or practices, by and through their agents, created and condoned a hostile work environment against Plaintiff.

249.     As a result of the severe and pervasive discriminatory treatment and discriminatory customs, policies and/or practices of Defendant Town and Defendant Police Department, by and through its agents under color of law, Plaintiff suffered economic damages, emotional distress, mental anguish, humiliation and embarrassment, legal and related expenses.

250.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

## AS AND FOR A FOURTH CLAIM FOR
## RACE DISCRIMINATION IN VIOLATION 42 U.S.C §1981

251.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

252.     Plaintiff alleges that Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on plaintiffs race.

253.     Through discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a racially discriminative manner.

254.     Defendants Town, Police Department and Stauffiger should have known about this racial discrimination in the workplace.

255.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end the discriminatory treatment and conditions under which Plaintiff was subjected, and which failure to act was motivated by race and bad faith.

256.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of Defendant Town and Defendant Police Department and Stauffiger, by and through its agents under color of law, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

257.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

<b>AS AND FOR A FIFTH CLAIM FOR<br>RETALIATION IN VIOLATION 42 U.S.C §1981</b>

258.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

259.     Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents engaged in retaliation against Plaintiff as a result of his lawful complaints, both formal and informal, regarding discriminatory treatment in the workplace.

260.     Defendants Town, Police Department and Stauffiger knew or should have known about this retaliatory conduct.

261.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end retaliation which Plaintiff was subjected to, which failure to act was motivated by race and bad faith.

262.     As a result of retaliatory acts of the Defendants Town, Police Department and Stauffiger, acting under the color of law, through their agents, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

263.    Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

## AS AND FOR SIXTH CLAIM FOR HOSTILE
## WORK ENVIRONMENT IN VIOLATION 42 U.S.C §1981

264.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

265.    Plaintiff alleges that Defendants Town, Police Department and Stauffiger's discriminatory treatment and discriminatory customs, policies and/or practices, by and through their agents, created and condoned a hostile work environment against Plaintiff.

266.    As a result of the severe and pervasive discriminatory treatment and discriminatory customs, policies and/or practices of Defendant Town and Defendant Police Department, by and through its agents under color of law, Plaintiff suffered economic damages, emotional distress, mental anguish, humiliation and embarrassment, legal and related expenses.

267.    Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

## AS AND FOR A SEVENTH CLAIM PURSUANT TO
## 42 U.S.C. §1983 FOR EQUAL PROTECTION VIOLATIONS

268.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

269.    Plaintiff alleges that Defendants Town, Police Department and Stauffiger's action and conduct, by and through their agents, alleged above were done under color of law while in the performance of their duties as Town of Tonawanda and Town of Tonawanda Police Department employees.

270.    The allegations cited above are in violation of Plaintiff's Fourteenth Amendment

rights under the Equal Protection Clause of the United States Constitution to be free from

discrimination, harassment and retaliation in his employment with the Town of Tonawanda and

the Town of Tonawanda Police Department.

271.    Defendants Town of Tonawanda, Police Department and Stauffiger failed to

properly investigate and address the allegations made by Plaintiff of discrimination, hostile work

environment and retaliation as evidenced by racially motivated actions and against plaintiff.

272.    Defendants Town, Police Department and Stauffiger's failure to take any

remedial and or corrective action when specifically called upon to address discrimination against

him and the hostile work conditions caused Plaintiff to sustain economic damages, mental

anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

273.    Due to the foregoing, Plaintiff has been damaged that amount to be determined at

trial and in no event no less than $10,000,000.00.

**AS AND FOR AN EIGHTH CLAIM FOR**
**RACE DISCRIMINATION IN VIOLATION OF**
**THE NEW YORK STATE EXECUTIVE LAW §296**

274.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above and

incorporates those allegations by reference as if each were set forth herein.

275.    Plaintiff alleges that Defendants Town, Police Department and Stauffiger, by and

through their agents, engaged in a pattern and practice of discrimination against Plaintiff with

respect to terms, conditions and privileges of employment based on Plaintiff's race.

276.    As part of their discriminatory treatment and discriminatory customs, policies

and/or practices Defendants Town, Police Department and Stauffiger treated plaintiff in a

manner evidencing race discrimination.

277.    Defendants Town, Police Department and Stauffiger knew or should have known

about this racial discrimination against Plaintiff.

278.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by race.

279.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of Defendants Town, Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

280.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

## AS AND FOR A NINTH CLAIM FOR
## HOSTILE WORK ENVIRONMENT IN VIOLATION
## OF THE NEW YORK STATE EXECUTIVE LAW §296

281.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

282.     Plaintiff alleges that Defendants Town and Police Department, by and through their agents, created and condoned a hostile work environment against Plaintiff.

283.     As a result of the severe and pervasive discriminatory treatment and discriminatory customs, policies and/or practices of Defendants Town, Defendant Police Department and Stauffiger, by and through their agents acting under color of law, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

284.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at

trial and in no event no less than $10,000,000.00.

**AS AND FOR A TENTH CLAIM FOR**
**RETALIATION IN VIOLATION OF**
**THE NEW YORK STATE EXECUTIVE LAW §296**

285.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

286.    Plaintiff alleges that the Defendants Town, Defendant Police Department and Stauffiger, by and through their agents engaged in retaliation against Plaintiff as a result of his lawful complaints, both formal and informal, about discriminatory treatment in the workplace.

287.    Defendants Town, Defendant Police Department and Stauffiger, knew or should have known about this retaliatory conduct.

288.    Defendants Town, Defendant Police Department and Stauffiger, failed and refused to take appropriate action to end retaliation which Plaintiff was subjected to, which failure to act was motivated by race and bad faith.

289.    As a result of retaliatory acts of the Defendants Town, Defendant Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

290.    Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR AN ELEVENTH CLAIM FOR DISCRIMINATION**
**IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT**
**AND REEMPLOYMENT RIGHTS ACT PURSUANT TO 38 U.S.C §4301 ET SEQ.**

291.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

292.     Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's status as an honorably discharged veteran.

293.     As part of a discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a manner evidencing discrimination based upon his status as an honorably discharged veteran.

294.     Defendants Town, Police Department and Stauffiger knew or should have known about this discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff based upon his status as an honorably discharged veteran.

295.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by his status as an honorably discharged veteran.

296.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of the Defendants Town, Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

297.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR TWELFTH CLAIM FOR**
**MILITARY STATUS IN VIOLATION OF**
**THE NEW YORK STATE EXECUTIVE LAW §296**

298.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and

incorporates those allegations by reference as if each were set forth herein.

299.     Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's status as an honorably discharged veteran.

300.     As part of a discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a manner evidencing discrimination based upon his status as an honorably discharged veteran.

301.     Defendants Town, Police Department and Stauffiger knew or should have known about this discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff based upon his status as an honorably discharged veteran.

302.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by his status as an honorably discharged veteran.

303.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of the Defendants Town, Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

304.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR A THIRTEENTH CLAIM IN**
**VIOLATION OF THE FIRST AMENDMENT**
**<u>OF THE UNITED STATES CONSTITUTION</u>**

305.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

306.     Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's political affiliation and political activity.

307.     As part of their discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a manner evidencing discrimination based upon his political affiliation and his political activity.

308.     Defendants Town, Police Department and Stauffiger knew or should have known about this discrimination against Plaintiff due to his political affiliation and his political activity.

309.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by Plaintiff's political affiliation and political activity.

310.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of Defendants Town, Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

311.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR A FOURTEENTH CLAIM
IN VIOLATION OF THE NEW YORK
STATE CONSTITUTION ARTICLE 1, SECTION 1**

312.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and

incorporates those allegations by reference as if each were set forth herein.

313. Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's political affiliation and his political activity.

314. As part of discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a manner evidencing discrimination based upon his political affiliation and his political activity.

315. Defendants Town, Police Department and Stauffiger knew or should have known about this discrimination against Plaintiff due to his political affiliation and his political activity.

316. Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by his political affiliation and his political activity.

317. As a result of discriminatory treatment and discriminatory customs, policies and/or practices of the Defendants Town and Defendant Police Department, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

318. Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

## AS AND FOR A FIFTEENTH CLAIM
## IN VIOLATION OF THE NEW YORK
## STATE CONSTITUTION ARTICLE 1, SECTION 8

319. Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

320.     Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's political affiliation and his political activity.

321.     As part of discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a manner evidencing discrimination based upon his political affiliation and his political activity.

322.     Defendants Town, Police Department and Stauffiger knew or should have known about this discrimination against Plaintiff due to his political affiliation and his political activity.

323.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by his political affiliation and his political activity.

324.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of the Defendants Town and Defendant Police Department, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

325.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

## AS AND FOR A SIXTEENTH CLAIM
## IN VIOLATION OF THE NEW YORK
## STATE CONSTITUTION ARTICLE 1, SECTION 9

326.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

327.     Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's political affiliation and his political activity.

328.     As part of discriminatory treatment and discriminatory customs, policies and/or practices Defendants Town, Police Department and Stauffiger treated Plaintiff in a manner evidencing discrimination based upon his political affiliation and his political activity.

329.     Defendants Town, Police Department and Stauffiger knew or should have known about this discrimination against Plaintiff due to his political affiliation and his political activity.

330.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by his political affiliation and his political activity.

331.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of the Town, Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

332.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR A SEVENTEENTH CLAIM
IN VIOLATION OF THE NEW YORK
STATE LABOR LAW SECTION 201-d**

333.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

334.     Plaintiff alleges that the Town, Police Department and Stauffiger, by and through

their agents, engaged in a pattern and practice of discrimination against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's political affiliation and his political activity.

335. As part of discriminatory treatment and discriminatory customs, policies and/or practices Town, Police Department and Stauffiger treated plaintiff in a manner evidencing discrimination based upon his political affiliation and his political activity.

336. Town, Police Department and Stauffiger knew or should have known about this discrimination against Plaintiff due to his political affiliation and his political activity.

337. Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and conditions to which Plaintiff was subjected to, and which their failure to act was motivated by his political affiliation and his political activity.

338. As a result of discriminatory acts of the Town, Police Department and Stauffiger, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

339. Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

**AS AND FOR AN EIGHTEENTH CLAIM
IN VIOLATION OF THE NEW YORK
<u>STATE CIVIL SERVICE LAW SECTION 107</u>**

340. Plaintiff repeats and realleges the allegations set forth in the paragraphs above and incorporates those allegations by reference as if each were set forth herein.

341. Plaintiff alleges that the Defendants Town, Police Department and Stauffiger, by and through their agents, engaged in discriminatory treatment and discriminatory customs, policies and/or practices against Plaintiff with respect to terms, conditions and privileges of employment based on Plaintiff's political affiliation and his political activity.

342.     As part of discriminatory treatment and discriminatory customs, policies and/or practices Town, Police Department and Stauffiger treated plaintiff in a manner evidencing discrimination based upon his political affiliation and his political activity.

343.     Defendants Town, Police Department and Stauffiger knew or should have known about this discrimination against Plaintiff due to his political affiliation and his political activity.

344.     Defendants Town, Police Department and Stauffiger failed and refused to take appropriate action to end discriminatory treatment and discriminatory customs, policies and/or practices to which Plaintiff was subjected to, and which their failure to act was motivated by his political affiliation and his political activity.

345.     As a result of discriminatory treatment and discriminatory customs, policies and/or practices of the Defendants Town and Defendant Police Department, acting under the color of law, through its agents, Plaintiff suffered economic damages, mental anguish, emotional distress, humiliation and embarrassment, legal and related expenses.

346.     Due to the foregoing, Plaintiff has been damaged that amount to be determined at trial and in no event no less than $10,000,000.00.

Due to the foregoing the plaintiff has been damaged in an amount to be determined at trial.

## **JURY TRIAL**

Plaintiff demands a trial by jury on all issues that are so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays that this honorable court grant the following relief:

1.     Declare the aforementioned actions of Defendants were unconstitutional in violation of the United States Constitution, the New York State Constitution, the New York State Human Rights Law, New York State Labor Law, and the New York State Civil Service Law.

2.     Enjoin Defendants from such further and other violations of United States Constitution, the New York State Constitution, the New York State Human Rights Law, New York State Labor Law, and the New York State Civil Service Law.

3.     As and for Plaintiff's First Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

4.     As and for Plaintiff's Second Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

5.     As and for Plaintiff's Third Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

6.     As and for Plaintiff's Fourth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

7.     As and for Plaintiff's Fifth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

8.     As and for Plaintiff's Sixth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

9.     As and for Plaintiff's Seventh Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

10.     As and for Plaintiff's Eighth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

11.     As and for Plaintiff's Ninth Claim, grant Plaintiff an amount to be determined at

trial, in an amount no less than $10,000,000.00;

12. As and for Plaintiff's Tenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

13. As and for Plaintiff's Eleventh Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

14. As and for Plaintiff's Twelfth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

15. As and for Plaintiff's Thirteenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

16. As and for Plaintiff's Fourteenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

17. As and for Plaintiff's Fifteenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

18. As and for Plaintiff's Sixteenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

19. As and for Plaintiff's Seventeenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

20. As and for Plaintiff's Eighteenth Claim, grant Plaintiff an amount to be determined at trial, in an amount no less than $10,000,000.00;

21. Grant Plaintiff all costs and disbursements for this action, including reasonable attorneys' fees; and

22. Grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Kenmore, New York
April 19, 2023

_/s/ Paul D. Weiss_
PAUL D. WEISS, ESQ.
BARTLO, HETTLER, WEISS & TRIPI
_Attorneys for Plaintiff Christopher Ryan_
22 Victoria Boulevard
Kenmore, New York   14217
(716) 873-8833
pweiss@bhwtlaw.com